## LOUISVILLE & N. R. CO. v. RAILROAD COMMISSION OF ALABAMA.

### (District Court, M. D. Alabama, N. D.   May 5, 1913.)

### No. 264.

**1. CARRIERS (§ 18*)—STATE REGULATION OF RATES—INJUNCTION—CONSTRUCTION OF DECREE.**

A federal court in Alabama at suit of complainant and other railroad companies entered a decree enjoining state officers, including the members of the State Railroad Commission, from enforcing certain acts of the Legislature establishing rates on intrastate business. *Held*, that while the decree did not enjoin the making of orders by the Commission, having the effect of establishing the statutory rates, the taking of any step towards enforcing such orders as by serving them on complainant would be a violation of the injunction.

[Ed. Note.—For other cases, see Carriers, Cent. Dig. §§ 13, 16–18, 20, 24; Dec. Dig. § 18.*]

**2. JUDGMENT (§ 713*)—MATTERS CONCLUDED—MATTERS WHICH MIGHT HAVE BEEN LITIGATED—CONSTRUCTION OF DECREE.**

The recognized principle that, where a general judgment is rendered, all matters that might have been interposed as a defense are considered as adjudicated between the parties, is not applicable when a decree specifically expresses the issues determined and upon which the relief is granted, in which case only such issues are res judicata.

[Ed. Note.—For other cases, see Judgment, Cent. Dig. §§ 1063, 1066, 1099, 1234–1237, 1239, 1241, 1247; Dec. Dig. § 713.*]

**3. CARRIERS (§ 18*)—STATE REGULATION OF RATES—INJUNCTION—CONSTRUCTION OF DECREE.**

A decree of a federal court enjoining the enforcement of state statutes establishing a system of railroad rates for freight and passengers on the

ground that such system, if put into effect, would be confiscatory, construed, and *held* not an adjudication of the invalidity of the passenger rates alone, nor to preclude the State Railroad Commission, acting under its independent rate-making power, from establishing and putting into effect a similar passenger rate on complainant's road with the right to a hearing as to its reasonableness and upon the issue whether its effect would be to render complainant's intrastate business as an entirety unremunerative.

[Ed. Note.—For other cases, see Carriers, Cent. Dig. §§ 13, 16-18, 20, 24; Dec. Dig. § 18.*]

In Equity. Suit by the Louisville & Nashville Railroad Company against the Railroad Commission of Alabama. On petition by complainant and rule issued thereon against Charles Henderson, Leon McCord and Frank Julian, respondents, to show cause why they should not be punished for contempt for violation of injunction. Rule discharged.

See, also, 196 Fed. 800.

Cabaniss & Bowie, of Birmingham, Ala., and W. A. Colston, of Louisville, Ky., for complainant.

Samuel D. Weakley, of Birmingham, Ala., and R. C. Brickell, Atty. Gen., of Montgomery, Ala., for respondent.

GRUBB, District Judge. This matter was submitted for decision upon a rule served upon respondents, who are the members of the Railroad Commission of Alabama, to show cause why they should not be punished for contempt in violating the terms of a permanent injunction that was heretofore issued in the cause, enjoining the respondents from taking any steps to enforce certain rate statutes enacted by the Legislature of Alabama, known as the "Maximum Freight Act," the "Eight Group Acts" and the "Maximum Passenger Rate Act." The alleged violation of the injunction consists in the making of an order by the Commission requiring the complainant to put into effect a passenger rate of 2½ cents a mile for adults and a rate of 1¼ cents for children, and the serving of the order on the complainant.

The facts and history of the case in which the injunction was made permanent are fully stated in the statement of facts and the opinion in the report of the original case. L. & N. R. Co. v. Railroad Commission (D. C.) 196 Fed. 800. The order of the Commission asserted to constitute the contempt was made on the 19th day of February, 1913, and its effect was to direct the complainant on and after March 6, 1913, to put in effect between all points on its railroad in Alabama a standard passenger rate of 2½ cents per passenger mile for adults and a rate of 1¼ cents per passenger mile for children not over 12 nor under 5 years of age, and providing that complainant's proportion of joint passenger rates between points in Alabama should not exceed the standard rates prescribed. The final decree by which the injunction was made permanent was rendered April 2, 1912, but postponed the restoration of the rates which were in effect before the statutory rates went into effect until April 15, 1912.

The Commission, in answer to the rule, present three propositions, any one of which, if resolved in its favor, would result in a denial of the relief asked for by the complainant in the petition upon which the rule issued. They are (1) that the making of the order complained of was a legislative or quasi legislative act, and for that reason one that would have been beyond the jurisdiction of a court of equity to enjoin, and for that reason one the making of which could not sustain a contempt proceeding; (2) that the injunction was directed against the enforcement of all the rate statutes in their entirety, and that the Commission was not enjoined from putting in force any one of them separately; and (3) that the making of the order complained of was not an enforcement of the statutory passenger rate act, but an exercise of the·Commission's independent power of establishing reasonable rates and fares.

[1] 1. It is contended by the Commission upon the threshold that the making of the order could not have been a contempt, since the court was without jurisdiction to enjoin the Railroad Commission from making such an order, it being the exercise of a legislative function, as much so as it would be without jurisdiction to enjoin the Legislature in advance from passing an act establishing a like rate. This may be conceded to be the law. However, the final decree awarding the permanent injunction did not attempt to enjoin the Commission from making such an order. Its effect was to enjoin the Commission from taking any steps against complainant or its agents to compel it to observe or to enforce any of the said several acts of the Legislature. While, therefore, the mere making of an order having the effect of establishing the statutory rate may not have been a violation of. the injunction, a step taken to enforce such an order would be a violation of it. The service of the order on complainant, the effect of which was to put the order into effect within 20 days thereafter, would constitute a step to enforce the order. Upon the order becoming effective by this means, the rate created by it was by force of the order and of the statute prima facie a valid one in any legal proceeding against complainant, and the nonobservance of the rate, so made effective by the order, by collecting a rate in excess of it, subjected the complainant to penalties at the instance of those compelled by it to pay the higher rates. The order was attended with these results without further action on the part of the Commission than the service of the order upon the complainant and the lapse of 20 days. It seems clear that the making of the order, if its purpose is held to be the enforcement of the maximum passenger rate act, combined with service of it on the complainant, was the taking of a step by the Commission to enforce the statute against complainant.

2. It is further contended by the Commission that the effect of the injunction was merely to restrain the Commission from enforcing the schedule of rates comprised in the group of statutes, consisting of the Maximum Freight Act, the Eight Group Acts, and the Maximum Passenger Rate Act in their entirety, and that it left the Commission at liberty to put in force singly any one of·the several acts com-

prising the group; that the report of the special master and the opinion of the court upon the final decree, as well as the language of the final decree, show that the combined schedule was denounced as confiscatory; and that there was no ruling by either the master or the court that the passenger rate act, apart from its association with the other acts assailed, would in its operation deprive the complainant of its property without due process of law.

An examination of the master's report, of the opinion of the court, and of the language of the final decree is persuasive that there was no adjudication in the cause that the operation of the maximum passenger rate, independently of its associated rate acts, would be confiscatory. It may be true that the pleadings were broad enough to present this issue, and that there is evidence in the record from which the inference might arise that the passenger business of complainant when conducted under the statutory rate was unremunerative and confiscatory, even though considered apart from complainant's freight business. The master's report, the court's opinion, and the final decree, in connection with the attitude of the parties during the cause, indicate that the court did not attempt to determine whether, the passenger rate act would be confiscatory in its operation, if it alone were enforced and the remaining rate statutes enjoined, and the complainant in that event at liberty to put in freight rates not limited by the statutory maxima. It is conceivable that the court might have reached a different conclusion as to the confiscatory effect of the statutory passenger rate, when put in force by itself or in connection with a group of statutory freight rates. In the former case the revenue from the freight business, when unregulated, might make the total revenue from freight and passenger traffic remunerative, though the passenger traffic unaided might not be so. In the latter case the freight traffic conducted under statutory rates might not only lend aid to the passenger traffic under like regulation, but be a detriment to it, so that the entire business of the carrier would be conducted at a loss. The passenger traffic is conducted on the same rails and largely with the same plant as is the freight, and might be held remunerative in connection with a remunerative freight business, though, if it were conducted alone, the holding would be different.

The question as to whether the statutory passenger rate, if it alone was put in force, would prove confiscatory, seems not to have been presented to or decided by the court. What the court did decide was that the entire schedule represented by the statutory passenger and freight rates as fixed by the group of acts, the enforcement of which was enjoined, was confiscatory in its operation. The court in its final decree was careful in each instance to limit its findings, as to each class of statutory rates, to their effect when taken in connection with every other class. The assault was made by complainant upon the effect of the rates as an entirety upon the intrastate business of the complainant, and the master and court determined that the schedule of rates, taken as a whole, was confiscatory with relation to complainant's intrastate business, both freight and passenger, and not

that the 2½ cent passenger rate, in connection with freight rates unrestricted by statutory regulation, would be.

[2] The complainant contends that the unreasonableness of the statutory passenger rate in and of itself, being within the issues which were or might have been litigated by the Commission under the pleadings and evidence in the case, has become res adjudicata between the parties without regard to what the court actually decided upon the well-recognized legal principle that, where a general judgment is rendered, all matters that were or might have been interposed as a defense to it are considered as adjudged between the parties. While this principle would govern in cases where the judgment did not set out the issues actually adjudicated, it does not seem to me that it should apply when the decree of the court specifically expresses the issues determined by it and upon which the relief is granted. The inquiry as to the reasonableness of the passenger rate was material in any event upon the litigated question as to whether the schedule in its entirety was confiscatory, and for that reason the presence of evidence in the record, tending to support that issue, would not be conclusive that the issue itself was within the litigated issues.

[3] If the unreasonableness of the passenger rate of itself was not actually determined by the district court in the equity cause, then under the principle of the case of Smyth v. Ames, 171 U. S. 361–364, 18 Sup. Ct. 888, 889 (43 L. Ed. 197), the Commission would still have the right to litigate that issue, unless the operation of the reduced passenger rate of itself was such as to make the entire intrastate business of complainant unremunerative. In that case the Supreme Court said:

"The court is of opinion that the present application by the appellants in each of the above cases should be granted. The general question argued before us on the original hearing was whether the rates established by the Nebraska statute, looking at them as an entirety, were so unreasonably low as to prevent the railroad companies from earning such compensation as would be just, having due regard to the rights both of the public and of the companies. In our examination of that question it was appropriate and necessary to inquire as to the earnings of the respective companies under the rates which they had established, looking at those rates, also, as an entirety. In this way we ascertained the probable effect of the statute in question. We did not intend by an affirmance of the several decrees to adjudge that the railroad companies should not at any time in the future, if they saw proper, reduce the rates, or any of them, under which they were conducting business at the time the final decrees were rendered, nor that the state board of transportation should not reduce rates on specific or particular articles below the rates which the companies were charging on such articles when the decrees were entered. It may well be that on some particular article the railroad companies may deem it wise to make a reduction of the rate, and it may be that the public interests will justify the state board of transportation in ordering such reduction. We have not laid down any cast-iron rule covering each and every separate rate. We only adjudged that the enforcement of the schedules of rates established by the state statute, looking at such rates as a whole, would deprive the railroad companies of the compensation they were legally entitled to receive. We did not pass judgment upon the reasonableness or unreasonableness of the rates on any particular article prescribed by the statute or by the railroad companies. If the state should by statute, or through its board of transportation, prescribe a new schedule of rates, covering substantially all articles, and which would materially reduce those charged by the companies respectively, or should by a reduction of rates on a

limited number of articles make its schedule of rates, as a whole, produce the same result, the question will arise whether such rates, taking into consideration the rights of the public as well as the rights of carriers, are consistent with the principles announced by this court in the opinion heretofore delivered."

The complainant contends that such a ruling would destroy the efficiency of the injunction, since the Commission could separately and at different times restore the rates prescribed in each act, and so place the matter in the attitude it was before the final decree. The injunction being against the statutory rate system in its entirety, an attempt to restore the system, or so substantial a part of it as to reduce the intrastate business of complainant below the remunerative point, would violate the injunction. An attempt, however, to restore a single rate or a number of rates whose effect was less than this, would not violate the injunction. Each instance would depend upon the effect of the changed rates on the volume of the complainant's intrastate business. If the reduced passenger rate, when put into effect alone, had the former effect, it would violate the injunction; otherwise, it would not. The efficacy of the decree to protect the complainant against confiscation from the schedule in its entirety is complete. It was not intended to do more.

Conceding, however, the right of the Commission to still litigate the reasonableness of the statutory passenger rate, the question arises whether, in view of the language of paragraph six of the final decree, it can proceed to do so without first securing a modification of the injunction. The right of the Commission to proceed depends upon what it was enjoined by the final decree of the court from doing, rather than upon what was found by the court as expressed in the final decree. If the mandate of the court is broader than the findings require, the mandatory language controls, and the respondents are not at liberty to violate the mandate of the court because the relief may not conform to the findings upon which it is based. The sixth paragraph of the final decree contains the mandate of the court. It enjoins the respondents from taking any step to compel the complainant to observe or to enforce "any of the said several acts of the Legislature." One of the acts enjoined was the act establishing a maximum passenger rate of 2½ cents per passenger mile. The sole effect of this act was to establish this maximum passenger rate. The order of the Commission directs complainant to put in effect the identical rate prescribed by the statute as the maximum. If the order be construed as having been made under the power of the Commission to enforce the statute, it is plainly a violation of an injunction, the effect of which was to restrain the Commission from taking any step to enforce the statute.

The case is to be distinguished from that of Smyth v. Ames, 171 U. S. 361, 18 Sup. Ct. 888, 43 L. Ed. 197, in two respects: (1) In that case a complete schedule of freight rates prescribed by statute was enjoined as being confiscatory in its entirety. The effect of the language of the original injunction in that case was construed to be such as to prevent the carrier or the board of transportation from changing any single rate of the entire schedule. The court upon ap-

plication modified the decree so as to permit the carrier or the board of transportation to change individual rates to an extent not affecting so substantially the carrier's earnings on its entire business, as to make them unremunerative. In this case the mandate of the court, which is to be looked to in this proceeding as controlling, forbids the Commission from taking any steps to enforce a statute prescribing but one rate, a maximum 2½ cent passenger rate. For the Commission to do this specific thing, without first securing a modification of the court's mandate, would necessarily be a violation of the injunction. (2) In the case cited the board of transportation did not undertake to put even a single reduced rate into effect until it had first secured from the court a modification of the language of the decree justifying it in taking such action. In this case, though the act done was more clearly inhibited by the decree of the court, the Commission undertook to accomplish it without applying for leave and without securing a modification of the decree. The measure of the obligation of the Commission to conform to the injunction is to be found in the language of the mandate of the court, though its language may have been considered broader than the findings of the court, expressed in the decree and upon which the relief granted was based, required. So that, even though the Commission may not be estopped by the final decree as against the complainant to still litigate the reasonableness of the 2½ cent passenger rate, it does not follow that it could proceed to this end until it had first secured a modification of the injunction after the method adopted by the board of transportation in the case of Smyth v. Ames.

Nor is the order of the Commission, if made with the purpose to enforce the statute, justified upon the idea that changed conditions renewed its authority to act. The final decree expressly retained jurisdiction in the district court of the matter of changes in the rates due to changed conditions, and it was incumbent upon the Commission to obtain leave of the district court, as provided for in paragraph seven of the decree, before assuming jurisdiction to act upon this ground. Moreover, the Commission did not, in making the order, rely upon any changed conditions. Again, the statutory passenger rate was enjoined because it operated as a discrimination against complainant, as well as a deprivation of its property, an order of the Commission having fixed the rate for other carriers at 2¾ cents. It is now stated that this order has been revoked by the Commission, but this showing should have been made to the court by the Commission upon an application to modify the injunction, before it attempted to enforce the passenger rate act.

The conclusion reached is that, if the order of the Commission is to be construed as having been made by it in an attempt to enforce the statute prescribing the maximum passenger rate, it was a violation of the injunction.

3. The question remains as to whether the action of the Commission was an attempted enforcement of the passenger rate act or whether it was an order made by it in pursuance of its independent rate-making power. If the latter, it was not a violation of an in-

junction which restrained only the enforcement of the passenger rate act. The passenger rate act went into effect February 14, 1907. At that time section 5659 of the Code of 1907 vested the Railroad Commission with authority to enforce freight and passenger statutory rates. On November 23, 1907, the Legislature of Alabama enacted a law withdrawing from the Railroad Commission "all power, authority or duty to enforce any rates, fares or charges for the transportation of property or passengers which have or may hereafter be prescribed by statute or made the maximum rates by statute." Acts Extra Session 1907, page 28. By the terms of section 4 of an act to amend sections 5, 29, 35, 41, and 52 of an act to create the Railroad Commission of the state of Alabama, approved February 23, 1907, authority was conferred on the Commission to enforce its own orders, except those relating to rates, by suits instituted by it in a manner therein provided. This act was also approved November 23, 1907. On August 20, 1909, an act of the Legislature was approved, by the terms of which section 4 of the amendatory act was amended so as to again amend section 41 of the act creating the Railroad Commission. The effect of the amendment was to authorize the Commission, in the event a carrier affected by a statutory fixed or maximum rate failed to put in effect such rate after 20 days from its becoming effective, to apply in its own name to any court of competent jurisdiction, etc., for a writ of mandamus or injunction or to institute in any such court any appropriate proceeding to compel the carrier to put in force such rate and observe and obey the same, and providing for a right of appeal in either party.

Under the existing legislation in June, 1912, when the citation in the proceedings which resulted in the order complained of was issued and served on the complainant, and during the progress of the hearings and at the time of the making of the order in February, 1913, the only authority of the Commission with relation to statutory rates was to apply to a court of competent jurisdiction in the event the carrier after 20 days refused to put the rate into effect for a mandamus, injunction, or other appropriate remedy. There was no requirement for a hearing or order of the Commission to put in force a statutory rate. There was no authority vested in the Commission by any of the various acts of the Legislature pertaining to its authority to entertain jurisdiction of hearings with relation to statutory rates or to make orders putting such rates into effect. The statutory rate acts, both passenger and freight, when taken in connection with the penalty act approved December 3, 1907 (Acts Extra Session 1907, pages 87–88), were self-executing, without action of the Commission, at least other than the initiation by it of legal proceedings for their enforcement.

During the same period the Railroad Commission was vested with an independent power to make rates, both passenger and freight. It had authority by virtue of sections 5852 and 5678 of the Alabama Code of 1907 to prescribe reasonable rates for passengers and freight, and to act on its own initiative in so doing; by section 5657 to classify both articles and carriers; and, while section 5658 of the

Code denied it the authority to increase a statutory rate, a subsequent act, approved August 9, 1907 (Acts Regular Session 1907, p. 711), gave it the power to increase or reduce statutory rates when changed conditions justified. Each of the Eight Group Acts provided that the Railroad Commission might change the rates by it established from time to time when conditions justified such action (Acts Extra Session 1907, pp. 91–152). The power so conferred was upheld as constitutional by the Circuit Court of Appeals. Railroad Commission v. Central of Georgia R. R. Co., 170 Fed. 225–237, 95 C. C. A. 117.

The Commission, therefore, at the time it entertained jurisdiction of this proceeding and made the order complained of, had ample authority to act in the matter of establishing rates and fares by making orders, after having granted hearings, as an independent rate-making body, but had no authority to grant hearings with relation to statutory rates or to make any order enforcing such rates. If, in the granting of the hearings and the making of the order complained of, it acted in its capacity as an independent rate-making body, it acted within its jurisdiction and statutory authority. If, on the other hand, its action in granting the hearing and making the order was in an endeavor to enforce the statutory maximum passenger rate act and it was not acting as an independent rate-making body, it then acted without its statutory authority and beyond its jurisdiction, since it had only such as the statute conferred. Its action should be attributed to the exercise of its lawful authority rather than to an usurpation, if it can be done consistently. The fact that a hearing was unnecessary to the enforcement of the statutory rate, as the statute itself conclusively determined the reasonableness of the rate and was controlling on the Commission, and the fact that no order on the part of the Commission was made essential by the terms of the passenger rate statute to its enforcement, strengthen the presumption that the Commission in entertaining jurisdiction and making the order complained of assumed to act, not in the enforcement of the passenger rate act, but by virtue of the general power conferred on it by the Legislature to make passenger rates. When the proceedings before the Commission were instituted, the statutory passenger rate had become ineffective as against complainant, because of the final decree of the district court of April 2, 1912, and this left the general power of the Commission, as to complainant, uncontrolled by any statutory rate, and furnished, for that reason also, an appropriate occasion for its exercise.

It is contended by complainant that the character of the proceeding before the Commission, the limited scope of the evidence adduced upon the hearing, and the language of the opinion and of the order made by it show that its action was in an attempt to enforce the statute, rather than in the exercise of its independent rate-making power. The most obvious answer is that no hearing and no order of any kind could be appropriate if the Commission was acting in the enforcement of the passenger rate act. It is said the evidence adduced upon the hearing before the Commission was identical with

that which was presented to the district court, and upon which the final decree in that cause was rendered; that no evidence was adduced before the Commission tending to show a changed condition at the time of the hearing before it from that which existed before and at the time of the final decree in the equity cause, and that the opinion of the Commission shows that the decision of the Commission that the 2½ cent rate was a reasonable one, depended, not upon a finding of a different set of facts from those before the district court upon the final hearing, but upon the adoption by the Commission of different methods of apportioning value and expense as between the freight and the passenger and the inter and the intra state business of the complainant, and which was in effect an overruling of the decision of this court. Conceding this to be a correct analysis of the proceeding before and the decision of the Commission, it seems to be persuasive, not so much of the fact that the Commission was enforcing the passenger rate act through the proceeding before it, as that it merely adopted an erroneous method of reaching a conclusion in the matter of fixing the rate independently, over which matter it had jurisdiction—an error which was subject to correction by the method of appeal provided for by the state statutes; or, if it resulted in the establishing of a confiscatory rate, by an application to this court on the part of the carrier for an injunction against its enforcement. No rulings of the Commission upon the hearing before it, though they were in conflict with the rulings of the district in the equity cause, could amount to a violation of the injunction, if the Commission in holding the hearing was not engaged in enforcing the passenger rate act.

It is claimed by the complainant that the unreasonableness of a 2½ cent passenger rate, as applied to it, has been adjudicated in the equity cause, and for that reason the Commission cannot relitigate it. Assuming this to be true, though it may be that no more was adjudicated in the equity cause than that the system of rates established by the Maximum Rate Act, the Eight Group Acts, and the Passenger Rate Acts were in their entirety and taken one in connection with all the others confiscatory, leaving the effect of the Passenger Rate Act, when put in force by itself and not in conjunction with the freight acts, undetermined, yet the error of the Commission, if it was error, in assuming to decide it in a proceeding instituted by it under its general rate-making power, would not be a violation of an injunction, the legal effect of which was merely to restrain it from enforcing the passenger rate act. At most, such error, if it existed, would subject the order of the Commission, when made, to reversal on appeal or to be restrained upon a showing that the rate established by the Commission as a result of the supposed erroneous method was confiscatory. The failure of one court to follow the rulings of another, even when there exists a relation of subordination which makes the rulings of the latter conclusive, is not a contempt of court. In this case there is no relation of direct subordination between the two tribunals.

The complainant contends that it was the 2½ cent rate that was enjoined by the district court, and that the method or tribunal of its establishment, whether by act of the Legislature or order of the Commission, is immaterial. The language of the final decree is specific and forbids the Commission to enforce "any of the said several acts of the Legislature." The language of the decree extends, therefore, only to a 2½ cent rate established by the statute. It does not and could not extend to a 2½ cent rate to be established in the future by the Commission under its independent rate-making power. The court is without jurisdiction to enjoin the Commission, in advance, from exercising its independent rate-making power, but has jurisdiction only to enjoin the enforcement of the rate after its establishment. Railroad Commission of Alabama v. Central of Georgia R. R. Co., 170 Fed. 225, 95 C. C. A. 117. It is true that the Commission could not indirectly enforce the statutory rate under the guise of action had under its own authority to make rates. No motive on the part of the Commission to induce it to act by such indirection is apparent, in view of the fact that the passenger rate statute is self-executing, and that re-establishing the statutory rate by order of the Commission after a hearing could add nothing to its efficacy, either generally or as against a decree of this court. It was competent for the Legislature to fix a reasonable maximum passenger rate, and having done so there was no occasion for the Commission, in order to enforce the statutory rate, to hold hearings to determine its reasonableness and make an order establishing a rate which the paramount authority —the Legislature—had already declared in effect. The operation of the legislative rate having been enjoined by the court, a necessity then arose for the Commission to resort to its independent power to establish reasonable rates. Its action under these circumstances in establishing the 2½ cent rate after a hearing as to its reasonableness would naturally, and without subjecting the Commission to the charge of acting by indirection, be attributed to its independent rate-making power rather than to the exercise of an usurped power to enforce the statute. The fact, if it be a fact, that the Commission had before it no evidence of changed conditions is not controlling, since its independent rate-making power, at least after the statutory rate was enjoined, was not limited in its operation to a situation of changed circumstances. However, the decree of the court in its effect on the statutory rates may be said to have presented a changed situation, if one was essential to its right to act. The opinion of the Commission recites also that it used as the basis of its conclusion the results of complainant's operations for the fiscal year ending June 30, 1912, which could not have been before the district court when it rendered the final decree in April, 1912.

The complainant insists that the injunction would be valueless if the Commission has the right contended for by it. If the Commission in making and enforcing its order acted as the instrument of the Legislature in enforcing the enjoined statute, and in that capacity is permitted to take such action with impunity, the insistence is justified. The situation, however, seems to arise from the coexistence of two

independent and co-ordinate rate-making tribunals in our state system of government, the Legislature and the Railroad Commission. Where there are two such independent rate-making bodies, it is clear that an injunction that by its terms restrains the enforcement of the act of one alone will not be violated by an attempt on the part of the other to take similar but independent action. Such a situation puts upon the complainant the burden of invoking separate action against each tribunal, if each acts separately, and the remedy of the complainant in such a case would necessarily be to apply for an injunction against the enforcement by the Commission of any rate established by it by virtue of its independent authority to make rates.

If the legislative rate had been by the terms of the statute given a fixed tenure, the Commission's independent authority might have been suspended during the period of the statutory rate; the legislative action being paramount and effective to displace action by the Commission. The suspension of such a statutory rate by an injunction might even in that case have the effect to restore the Commission's power. However that may be, express power was conferred on the Commission by the Legislature to change the statutory rates when conditions justified, and this jurisdiction could be exercised any time after the statutory rates went into effect, no definite duration being accorded them by the statute. The jurisdiction to determine whether the conditions had changed so as to authorize the Commission to change statutory rates was vested in the Commission itself. Under this condition of legislation, the argument cannot prevail that the action of the Legislature in fixing the rate in question suspended all action on the part of the Commission, except to put in force the statutory rate.

The final decree was rendered in the district court in April, 1912, and this proceeding was instituted by the Commission in June, 1912. The argument is made that conditions could not have materially changed in so short a period, and that the Commission's order must be construed as an attempt to put in force the statutory rate for this reason. The rate acts were all enacted by the Legislature as early as the year 1907; the final decree was rendered in April, 1912; while the order of the Commission complained of was not made until February, 1913. The argument also fails to take into account the fact that the final decree itself created a change of conditions. The 2½ cent passenger rate, operating in connection with the Maximum Freight Rate Act and the Eight Group Act, as it had done up to the date of the final decree, may have made the conduct of complainant's intrastate business unremunerative, as was held by the district court, and it may still be true that the same passenger rate, taken in connection with the freight rates which the complainant was authorized by the final decree to and did restore after the date of the final decree, may yield the complainant proper remuneration on its entire intrastate business. It was therefore open to the Commission by virtue of its independent rate-making power to pass upon the reasonableness of the 2½ cent passenger rate, in view of this changed situation of the entire rate status from that which was considered by the

Legislature, when it enacted as a single system the freight and passenger rate acts, and by this court when it rendered its final decree enjoining the entire system of statutory rates, so enacted.

For these reasons, it seems to me that the complainant cannot contest the propriety of the Commission's order in a proceeding against it for contempt, since, not being an attempt to enforce the statutory rate act, the making and enforcement of the order does not constitute a violation of the injunction, and complainant is therefore remitted to the statutory remedy of appeal from the order of the Commission to the state courts or to an application for an injunction against the enforcement of the rate fixed by the order of the Commission, if the rate so fixed is confiscatory.

The rule to show cause is discharged, and the complainant is taxed with the costs.